UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

| | |
|---|---|
| SANTOS ADAMES, ) | |
| ) | |
| Petitioner, ) | Civil Action No. 5:11-CV-424-KSF |
| ) | |
| V. ) | |
| ) | |
| FRANCISCO QUINTANA, Warden, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Respondent. ) | |

\*\*\*\*     \*\*\*\*     \*\*\*\*     \*\*\*\*

Santos Adames is an inmate currently confined in the Federal Medical Center in Lexington, Kentucky. Proceeding without counsel, Adames has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 [R. 1] and has paid the $5.00 filing fee. Adames' petition challenges a prison disciplinary conviction arising out of an incident on October 11, 2009, when he was incarcerated at the Federal Correctional Institution in Big Spring, Texas. Adames contends that the conviction violated his due process rights and seeks a court order expunging the conviction, vacating the sanctions imposed, and directing the BOP to restore his forfeited good time credits. Adames also seeks a reprimand against all BOP staff involved; an order transferring him to an institution closer to his home; an order compelling the BOP to provide him with needed medical care; an investigation regarding racial discrimination; and $3.5 million in compensatory damages.

The Court conducts a preliminary review of habeas corpus petitions. 28 U.S.C. § 2243; *Alexander v. Northern Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). Because the petitioner is not represented by an attorney, the petition is reviewed under a more lenient standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003). At

this stage the Court accepts the petitioner's factual allegations as true and his legal claims are liberally construed in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Once that review is complete, the Court may deny habeas relief "if it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to Section 2241 petitions pursuant to Rule 1(b)). Otherwise, the Court may resolve the petition as law and justice require. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987).

The extensive record of Adames' conviction and his appeals of it include three different disciplinary convictions from the same Incident Report (#1929047), with contradictory sanctions, and involve four different Administrative Remedies (##579906, 599000, 609544, and 628283). As a result, the administrative record is confused and replete with administrative and clerical errors, perhaps created in part by (1) the manner in which each of his administrative appeals were processed, and (2) his transfer from FCI-Big Spring, where the incident report originated and where his original disciplinary hearing was held, to FCI-Williamsburg, where a rehearing of this same incident report was conducted, followed by yet a third disciplinary hearing, yielding inconsistent findings and sanctions. For these reasons, as more fully explained below, the warden will be directed to respond to Adames' habeas petition.

## BACKGROUND

**A.    The first conviction**

On October 11, 2009, while Adames was an inmate at FCI-Big Spring, his Case Manager, L. Patton, a female prison employee, reported that Adames grabbed her by the head and attempted to kiss her. He was charged in Incident Report #1929047 with sexual assault, a Code 101 offense.

Although Adames maintains that prior to the disciplinary hearing, he never received a copy of this incident report, the face of the incident report reflects that it was delivered to Adames on two different dates, October 14 and October 16, 2009, more than three days after staff became aware of the alleged incident. It also reflects that he refused to participate in the Uniform Disciplinary Committee ("UDC") hearing, and that the UDC referred the charge to a Disciplinary Hearing Officer ("DHO") for hearing, which was conducted on November 19, 2009. At the DHO hearing, Adames stated that he patted Patton on the shoulder and called her Jacobsen, but he denied assaulting her. After considering all of the evidence, DHO Gilbreath issued a report on January 29, 2010, finding Adames guilty of a Code 224 violation, a less severe offense. As sanctions, the DHO ordered Adames to spend 30 days in disciplinary segregation, disallowed 27 days of his Good Conduct Time, revoked his privileges to the commissary and visitation for 180 days, and recommended a disciplinary transfer to another prison.

Adames appealed his conviction in Administrative Remedy #579906. On June 7, 2010, the Regional Director remanded the conviction for no stated reason and directed the DHO to conduct a rehearing. By that time, Adames had been transferred to the Federal Correctional Institution-Williamsburg in Salters, South Carolina, where this rehearing would be conducted.

**B.    The second conviction**

To comply with the remand order from his appeal of the first conviction, Adames received another copy of Incident Report #1929047. [R. 1-1, p. 28] He appeared before the UDC on July 1, 2010, stating that his due process rights had been violated and that he had already been sanctioned. *Id.* The DHO conducted a rehearing on July 7, 2010. After considering all of the evidence, DHO Comstock issued a report on July 9, 2010, as amended on September 1, 2010, finding Adames guilty

of a Code 224 offense, Assaulting Any Person (minor) and, except for the recommended disciplinary transfer, imposed the same sanctions, that were imposed in the original DHO report on January 29, 2010. DHO Comstock also made these sanctions retroactively applicable to the date they were originally imposed. [R. 1-1, pp. 41-43]

Adames appealed this second conviction in Administrative Remedy ## 599000 and 609544.

**C.     The third conviction**

While Adames was appealing his second conviction, he was prosecuted a third time for the same Code 101 offense charged in the original incident report, for reasons that are unclear from the record. On January 14, 2011, Lieutenant M. Perrigan delivered another copy of Incident Report #1929047 to Adames, who appeared before the UDC on January 19, 2011, and stated that he had already been prosecuted for this offense. The UDC referred the matter to a DHO for further hearing. On January 26, 2011, a DHO hearing was held. DHO Dennis reported that Adames stated to him at this hearing: "I did it" and "I already went through this." [R. 1-1, p. 52] On January 26, 2011, DHO Dennis found Adames guilty of the Code 101 offense, and imposed sanctions nearly twice as severe as those imposed in Adames' second conviction.[1] The DHO ordered Adames to spend 60 days in disciplinary segregation; disallowed 41 days of his Good Conduct Time; and revoked his visitation, phone, and commissary privileges for 365 days. Also, it appears from this third conviction that DHO Dennis was unaware that a rehearing had already been conducted to correct the procedural defects surrounding Adames' first conviction.[2] Further, the effective date of the sanctions

---

[1] In Adames' first and second convictions, he was found guilty of simple assault, a Code 224 offense, that is less severe than sexual assault, a Code 101 offense.

[2] His DHO report contains the following statement: "As Administrative Remedy, the discipline process begins anew to clarify the delay in the issuance of the incident report and your

imposed on the third conviction was January 26, 2011, with no reference to the sanctions previously imposed by DHO Comstock on September 1, 2010, and without any statement of the effective date of the sanctions or indication whether they would be retroactively applicable to January 29, 2010, the date the original sanctions were imposed.

Adames appealed the third disciplinary conviction in Administrative Remedy #628283. On March 14, 2011, the BOP's Southeast Regional Office remanded that conviction to the institution for a rehearing without providing any stated reason. [R. 1-2, p. 24] Adames appealed that decision to the BOP's Central Office. On August 11, 2011, the Central Office declined to hear the merits of this appeal, stating:

> The record shows the Regional Director again remanded the IR for a rehearing. This is consistent with the provisions of Program Statement 5270.08, Inmate Discipline and Special Housing Units. The rehearing had occurred on March 9, 2011. Although the sequence of events is a bit confusing, we support the decision for the reasons noted above. You were directed to reinstate your appeal rights regarding the latest hearing through the Regional Director.
>
> Accordingly, we would be remiss to consider the merits of your appeal regarding the rehearing before the RD is afforded the opportunity to review the rehearing decision. Given this and the foregoing, we provide this response for informational purposes.

[R. 1-2, p. 34] Based on the record, it appears that no further action has been taken on Administrative Remedy #628283 subsequent to the Central Office decision on August 11, 2011.

The record in this case, compounded by administrative and typographical errors, confuses rather than clarifies both the events that have occurred and the reasons for the BOP's actions. For example, the record is devoid of any explanation as to why Adames was prosecuted in January of 2011, for a third time on the same offense, when it appears that the prosecution of the offense

---

refusal to appear for the UDC hearing." [R. 1-1, p. 53]

charged in Incident Report #1929047 should have been concluded with the rehearing held on July 7, 2010, and the DHO report issued on July 9, 2010, as amended on September 1, 2010. In addition, in its decision dated August 11, 2011, the Central Office states that a rehearing occurred on March 9, 2011, [R. 1-2, p. 34], but the Regional Office did not remand the matter to the institution for a rehearing until March 14, 2011. [R. 1-2, pp. 24] Whatever the correct date may be, the record is unclear and confusing, as well as the status of Adames' Administrative Remedy #628283.

## CONCLUSION

From the record, it is unclear (1) whether Adames stands convicted under the second DHO report issued on July 9, 2010, as amended on September 1, 2010, or under the DHO report issued on January 26, 2011; (2) what the status is of the January 26, 2011 DHO decision, given that on March 14, 2011, the Southeast Regional Office remanded the proceeding for rehearing; (3) what exact sanctions have been imposed on Adames; and (4) on what date these sanctions became effective. For these reasons, a response by the BOP is warranted, but only as to Adames' challenge of his disciplinary conviction(s) concerning Incident Report #1929047.

Adames' petition also contains generalized statements that the BOP has failed to provide him with medical care, an ostensible Eighth Amendment violation, and he seeks $3.5 million in compensatory damages. Such claims, including a claim for compensatory damages, are not cognizable in a Section 2241 habeas petition. Such a petition is reserved for a challenge to the manner in which a sentence is executed, rather than the validity of the sentence itself. *Capaldi v.Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998). Claims challenging conditions of confinement, such as claims regarding the adequacy of medical care, must be brought in a civil rights action under 28 U.S.C. § 1331 under the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*,

403 U.S. 388 (1971), not in a Section 2241 habeas petition. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004); *Sullivan v. United States*, 90 F. App'x 862, 863 (6th Cir. 2004). To the extent that Adames is attempting to assert *Bivens* claims in his Section 2241 petition, those claims will be dismissed without prejudice.

Accordingly, it is **ORDERED** as follows:

1. Plaintiff Santos Adames' constitutional claims arising under *Bivens*, including his claim for compensatory damages, are **DISMISSED WITHOUT PREJUDICE** to his right to refile under 28 U.S.C. § 1331, and the *Bivens* doctrine.

2. The Warden is directed to file a response to Adames' claim that his due process rights were violated in the BOP's prosecution(s) of Incident Report #1929047.

3. The Clerk of the Court shall prepare the documents necessary for service of process upon Adames' custodian, Francisco Quintana, Warden, Federal Medical Center, Lexington, Kentucky.

4. The Clerk of the Court shall prepare a "Service Packet" consisting of the following documents for service of process upon the United States of America:

   a. a completed summons form;
   b. the habeas petition and attachments thereto [R. 1];
   c. this Memorandum Opinion and Order; and
   d. a completed USM Form 285.

5. Additionally, the Clerk of the Court shall make a copy of the above-described documents, each set containing the following:

   a. a copy of all completed summons forms issued to the respondent;
   b. a copy of all completed USM Forms 285;
   c. one copy of the habeas petition and all attachments [R. 1]; and
   d. one copy of this Memorandum Opinion and Order.

6. The Deputy Clerk shall present the Service Packet(s) and copies to the United States Marshals Service ("USMS") in Lexington, Kentucky.

7. Service of Process upon the Respondent, Francisco Quintana, Warden, shall be conducted by the USMS in Lexington, Kentucky, by serving a Service Packet *personally* upon him, through arrangement with the Federal Bureau of Prisons.

8. The USMS must complete service on the named respondent by serving one set of copies of the documents described in paragraph 4 above, by certified or registered mail, to:

    a. the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Kentucky;

    b. the Office of the Attorney General of the United States in Washington, D.C.; and

    c. the Office of the Federal Bureau of Prisons in Washington, D.C.

9. The petitioner **SHALL**:

    a. Immediately advise the Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**.

    b. Communicate with the court *solely* through notices or motions filed with the Clerk's Office. **The court will disregard correspondence sent directly to the judge's chambers.**

    c. In every notice, motion, or paper filed with the court, certify in writing that he has mailed a copy to every defendant (or his or her attorney) and state the date of mailing. **The court will disregard any notice or motion which does not include this certification.**

This October 31, 2012.



Signed By:
*Karl S. Forester* KSF
**United States Senior Judge**